Bradley J. Luck
Emma L. Mediak
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Telephone (406) 523-2500
Telefax (406) 523-2595
bjluck@garlington.com
elmediak@garlington.com

Attorneys for Allegiance Benefit Plan Management, Inc.
and James McHugh

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| EAGLE AIR MED CORPORATION, a Utah Corporation, and VALLEY MED FLIGHT INC., a North Dakota Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> SENTINEL AIR MEDICAL ALLIANCE, a Wyoming Limited Liability Company, JEFFREY FRAZIER, an individual, and DOES 1 through 10, <br><br> Defendants. | MC-_____ <br><br> Relating to an Action Pending in the United States District Court for the Central Division of Utah <br> Case No. 2:16-cv-00176-TC <br><br><br> BRIEF IN SUPPORT OF MOTION TO MODIFY SUBPOENA OR FOR A PROTECTIVE ORDER |

# TABLE OF CONTENTS

I.     FACTUAL BACKGROUND ....................................................................1

    A.    Plaintiffs' First Amended Complaint ...................................................2

    B.    Plaintiffs' Litigation Conduct .............................................................6

II.    LEGAL STANDARD .........................................................................14

III.    ARGUMENT .....................................................................................17

IV.    COSTS AND FEES ...........................................................................21

V.    CONCLUSION .................................................................................22

CERTIFICATE OF COMPLIANCE ...................................................................23

2493501

# TABLE OF AUTHORITIES

**Cases**                                                                Page(s)

*Arista Records LLC v. Lime Grp. LLC*,
  2011 U.S. Dist. LEXIS 20709 (S.D.N.Y. Mar. 1, 2011)....................................17

*Atty. Griev. Comm'n of Md. v. Mixter*,
  109 A.3d 1 (Md. 2015) ........................................................................20

*Carrera v. First Am. Home Buyers Prot. Co.*,
  2014 U.S. Dist. LEXIS 101064 (S.D. Cal. July 23, 2014) .......................... 16, 18

*Coleman-Hill v. Governor Mifflin Sch. Dist.*,
  271 F.R.D. 549 (E.D. Pa. 2010)...........................................................20

*Compaq Comput. Corp. v. Packard Bell Elecs*,
  163 F.R.D. 329 (N.D. Cal. 1995)............................................... 16, 21

*Dart Indus. Co. v. Westwood Chem. Co.*,
  649 F.2d 646 (9th Cir. 1980) ...................................................... 16, 18

*Eagle Air Med Corporation v. Sentinel Air Medical Alliance*,
  Case No. 2:16-cv-00176-TC..................................................................1

*Fears v. Wilhelmina Model Agency, Inc.*,
  2004 U.S. Dist. LEXIS 5575 (S.D.N.Y. Mar. 29, 2004)...................................17

*Ginena v. Alaska Airlines, Inc.*,
  2011 U.S. Dist. LEXIS 116656 (D. Nev. Oct. 6, 2011) ...................................16

*Jimenez v. City of Chi.*,
  733 F. Supp. 2d 1268 (W.D. Wash. 2010) .........................................16

2493501

*Monte H. Greenawalt Revocable Tr. v. Brown*,
    2013 U.S. Dist. LEXIS 178802 (D. Nev. Dec. 18, 2013) ..................................16

*Rivera v. NIBCO, Inc.*,
    364 F.3d 1057 (9th Cir. 2004) ..........................................................................15

*RQ Const., Inc. v. Ecolite Concrete U.S.A., Inc.,*
    2010 U.S. Dist. LEXIS 80217 (S.D. Cal. Aug. 4, 2010)....................................17

*Seltzer v. Morton*,
    2007 MT 62, 336 Mont. 225, 154 P.3d 561 ......................................................20

*Soto v. Castlerock Farming & Transp., Inc.*,
    282 F.R.D. 492 (E.D. Cal. 2012) .......................................................................14

*White v. Smyers*,
    2015 U.S. Dist. LEXIS 50479 (E.D. Cal. Apr. 15, 2015) ..................................15

## Rules

Fed. R. Civ. P. 26(b)(1)................................................................ 15, 18, 20

Fed. R. Civ. P. 26(c)...........................................................................15

Fed. R. Civ. P. 26(c)(3)......................................................................21

Fed. R. Civ. P. 26(g)(i)(A)(ii) ...........................................................20

Fed. R. Civ. P. 45(d)(3)(A) ................................................................14

Fed. R. Civ. P. 45(d)(3)(B) ................................................................14

2493501

Counsel for Allegiance Benefit Plan Management, Inc. ("Allegiance") and James McHugh ("McHugh"), file this Brief in Support of the Motion to Modify Subpoena or For a Protective Order.

## I.     FACTUAL BACKGROUND

Allegiance and HcHugh are Montana residents and non-parties in this action. McHugh, in his capacity as an Allegiance employee, has  been served with a subpoena issued by Plaintiffs' counsel in an action pending in the United States District Court for the Central Division of Utah, *Eagle Air Med Corporation v. Sentinel Air Medical Alliance*, Case No. 2:16-cv-00176-TC.  Found. Aff. Bradley J. Luck ¶ 3, May 14, 2018 ("Found. Aff. Luck"), Ex. A:  Ltr. From Rachel L. Wertheimer to McHugh & Subpoena, Apr. 19, 2018, ECF No. 2:16-cv-00176-TC. McHugh seeks a modification of the subpoena or a protective order from this Court limiting the scope of his deposition (occurring subject to subpoena) to the sole issue identified as relevant by Plaintiffs:  how Defendant Jeffrey Frazier ("Frazier") acquired knowledge of the existence and terms of a contract between non-party Allegiance and Plaintiff Valley Med Flight Inc. ("Valley").

McHugh has in good faith conferred with Plaintiffs in an effort to resolve this dispute without court action.  Plaintiffs have declined to limit the scope of McHugh's deposition.

1

A.      **Plaintiffs' First Amended Complaint**

Eagle Air Med Corporation ("Eagle") and Valley are providers of air

medical transport services.  Found. Aff. Luck ¶ 4, Ex. B:  1st Am. Compl. ¶ 8,

Mar. 9, 2016, ECF No. 2:16-cv-00176-TC ("1st Am. Compl.").  In their First

Amended Complaint, Plaintiffs assert that they specialize in emergent transport of

patients from small rural area hospitals to larger care facilities.

Plaintiffs have filed a lawsuit against Sentinel Air Medical Alliance, LLC

("Sentinel") and one of Sentinel's owners, Frazier.  Found Aff. Luck, Ex. B:  1st

Am. Compl. ¶ 35.  Sentinel and Frazier review invoices from air ambulance

services for health plan administrators.  Frazier was a helicopter pilot during his

20-years in the US Coast Guard.  Frazier also has experience in flying helicopters

and management of air ambulance services in the private sector subsequent to

leaving the Coast Guard.  Found Aff. Luck ¶ 5, Ex. C: Dep. Dirk Visser 42, Sept.

11, 2017, ECF No. 2:16-cv-00176-TC.   Sentinel and Frazier opine on whether the

air ambulance invoices sent to health plans are reasonable based upon what other

air ambulance providers accept as allowable amounts and make recommendations

to the plan administrators regarding what the operations cost and reasonable

allowable amount for those services would be.  Found Aff. Luck, Ex. B:  1st Am.

Compl. ¶ 35.

2

The rapidly escalating billed charges by air ambulance companies has generated both national and local attention.  Some air ambulance companies have threatened or engaged in "balance billing," where they pursue a collection action against the covered patient if the health plan did not allow its demand to pay for its full bill charges as an Out-of-Network (non-contracted) provider.  These issues have led the Montana Legislature to consider consumer protection measures related to the costs of air ambulance services.[1]

Plaintiffs assert in their First Amended Complaint that they transferred Patient One and Patient Two on separate air ambulance flights.  Plaintiffs assert that they requested that the self-funded health plan for Patient One and the insurance company for Patient Two to pay full billed charges for these air ambulance flights.  However, the plan administrators refused to pay for the full billed charges for these air ambulance flights as they were determined to be unreasonably high in comparison to other billed charges invoices received from Plaintiffs for the same flight route and from other providers of similar services in

---

[1]  *See, e.g.*, New York Times' feature article at: https://www.nytimes.com/2015/05/06/business/rescued-by-an-air-ambulance-but-stunned-at-the-sky-high-bill.html (viewed May 7, 2018); ABC News "Nightline" feature "Sky Rage":  http://abcnews.go.com/US/sky-rage-bills-debt-lawsuits-follow-helicopter%20medevac/story?id=37669153 (viewed May 7, 2018).  For Montana Legislature's webpage on air ambulance cost control, see:  http://leg.mt.gov/css/committees/interim/2015-2016/economic-affairs/Committee-Topics/Ambulance/ambulance-memberships.asp (viewed May 7, 2018).

3

their respective areas.  One plan administrator offered to pay $8,164 toward the

$82,893.89 billed for Patient One's air ambulance flight.  This plan administrator

described Eagle's transport costs as "unreasonable" and "egregious" because they

were approximately 1100% of the Medicare reimbursement rate.  Found. Aff.

Luck, Ex. B:  1st Am. Compl. ¶ 31.

The other plan administrator offered to pay $7,600 toward the $32,389 billed

for Patient Two's air ambulance flight.  This second plan administrator stated that

it had engaged the services of Sentinel and Frazier to determine whether the billed

charge was reasonable.  The plan administrator stated that Sentinel and Frazier's

analysis revealed that Valley had charged 560% of the Medicare reimbursement

rate.  Sentinel and Frazier recommended paying $7,600, which was 131% of the

Medicare reimbursement rate.  Found. Aff. Luck, Ex. B:  1st Am. Compl. ¶ 32.

Plaintiffs assert that the various plan administrators have failed to pay at

least $816,716.38 of billed charges for air transport services rendered by Plaintiffs

based on similar recommendations made by Sentinel and Frazier.  Found Aff.

Luck, Ex. B:  1st Am. Compl. ¶ 33.

Plaintiffs sue Sentinel and Frazier for allegedly defaming them while

conducting rate review of Plaintiffs' claims as requested by the health plans.

Specifically, Plaintiffs assert four counts against Sentinel and Frazier:  defamation,

false light, tortious interference, and they seek a permanent injunction.  Found Aff.

4

Luck, Ex. B:  1st Am. Compl. ¶¶ 77-102.   Plaintiffs assert that Sentinel and Frazier have falsely opined about Plaintiffs' operating costs as part of Sentinel and Frazier's recommendations regarding reimbursement rates.  Found Aff. Luck, Ex. B:  1st Am. Compl. ¶ 43.

Sentinel and Frazier maintain, based on the documents they have received from Plaintiffs in discovery, that Sentinel accurately estimated Plaintiffs' operating costs.  Found. Aff. Luck ¶ 6, Ex. D:  Dep. Frazier 53-57, Feb. 1, 2018, ECF No. 2:16-cv-00176-TC-EJF.

Plaintiffs have not named any plan administrators as defendants in their First Amended Complaint.  McHugh, and his employer, Allegiance, are not named as defendants in this matter. [2]

---

[2] The First Amended Complaint does state:

> 52. For example, upon information and belief, one of the principals and the "primary partner" of Sentinel is also the President and Chief Executive Officer of Allegiance Benefit Plan Management, a large Plan Administrator located in Montana, which benefits from paying providers as little as possible for their services.

Found. Aff. Luck, Ex. B:  1st Am. Compl. ¶ 52.  The allegation that Allegiance profits from paying providers as little as possible is totally false.  Allegiance simply administers a Plan according to its terms and conditions and has no financial interest in any claims.

5

B.     **Plaintiffs' Litigation Conduct**

During the case, Plaintiffs have made no secret of their intention to exert

pressure on plan administrators who utilized Sentinel's services.  Plaintiffs'

counsel advised others in the air ambulance industry that their lawsuit would a be

vehicle for subjecting any health plan or insurance entity with any connection to

Defendants to harassment and burdensome discovery.  Plaintiffs also sought

assistance in identifying plan administrators who had utilized Sentinel's services:

> As soon as we have the status conference, we will send a subpoena to
> every company who has used or employed the scam used by Jeff
> Frazier.  Among those insurance companies who have employed this
> scam with AMRG [Plaintiffs' management company], we intend to
> depose the person who relied on the scam.  Your cooperation in
> identifying those who have employed his scam with your transports
> would be appreciated.  They too will receive a subpoena.

Found. Aff. Luck ¶ 7, Ex. E:  Email from Jesse Riddle, General Counsel to

Thomas A. Cook, Lisa E. Storey & Crystal L. Gordon, Industry Reps., *Sentinel Air*

*Medical Alliance*, Jeff Frazier (Mar. 3, 2016, 8:19 AM).

In response to this request, one of the industry representatives identified

Allegiance as a plan administrator who had worked with Sentinel.  Found. Aff.

Luck, ¶ 8, Ex. F:  Email from T. Cook to J. Riddle, *Sentinel* (Mar. 17, 2016 11:57

AM).  Plaintiffs, in accordance with their threat, then served a subpoena on

Allegiance in January 2017.  Found. Aff. Luck ¶ 9, Ex. G:  Allegiance – Subpoena

Prod. Docs. Civil Action, Jan. 25, 2017, ECF No. 2:16-cv-00176-TC.

6

This subpoena required Allegiance, a non-party, to produce all documents involving any communication between Allegiance and anyone else, including any insurers or plan administrator, that referred to Sentinel's evaluations of the reasonableness of any air ambulance providers' billed charges.  This was not limited to just reviews of air ambulance flights provided by Eagle or Valley, but instead included all evaluations Sentinel had ever performed for Allegiance.  This subpoena also required Allegiance to produce all documents that refer to or relate to Eagle, Valley, Sentinel, or Frazier.

Allegiance objected to the scope of the subpoena.  Found. Aff. Luck ¶ 10, Ex. H:  Luck ltr. to Pls.' counsel, Mar. 14, 2017.[3]  As noted in the objection,

_____

[3] The objection noted that:
- Allegiance had no involvement whatsoever with the claims at issue in the litigation;
- Allegiance has never processed a claim involving Eagle Air and has had minimal contact with Valley Med Flight.  That company and Allegiance became parties to a provider contract in August of 2015.  As a result, no issues regarding reimbursement are present or will exist during the term of the contract;
- Allegiance is never compensated based on what is paid to (or not paid) to a provider;
- Sentinel or any other review company would not be involved in Plans administered by Allegiance that utilize Maximum Eligible Expense (MEE) limits;
- Other Plans administered by Allegiance, predominantly not-for-profit self-funded or government Plans, have adopted specific plan documents and summary plan descriptions that set out all terms, conditions, coverages, limitations and exclusions regarding claim payments.  The plans, by law, are bound to follow the terms and conditions of the plan documents.

7

Allegiance and Valley had entered into a preferred provider contract in June 2015

("Preferred Provider Contract").  This Preferred Provider Contract set the rates at

which Allegiance would reimburse Valley for air ambulance flights.  Allegiance

will likely engage in future negotiations with Valley and potentially other air

ambulance companies for preferred provider contracts.  Allegiance therefore has an

important business interest in maintaining the confidentiality of its operations from

Valley, lest its own internal operations be used against it in future negotiations

over reimbursement rates.  Despite these concerns, Allegiance ultimately provided

Plaintiffs with well over 3,000 pages of documents.  Allegiance incurred

significant unreimbursed expenses in association with this document production.

Plaintiffs also issued a deposition subpoena for Dirk Visser ("Visser") who

is not named in the First Amended Complaint.  Visser is the CEO of Allegiance.

Visser is also a part owner of Sentinel but is not involved in the day-to-day

operations or any analysis conducted by Sentinel.  Found. Aff. Luck, Ex. C:  Dep.

Visser 7:25-8:5.

---

- For any air ambulance claim denied by Allegiance as not
being medically necessary, that determination would have been made
in connection with an Independent Review Organization (IRO) under
contract with Allegiance as is required by the ACA and ERISA claims
and appeals rules.  Sentinel is not one of those IROs.  Therefore, there
is no connection between Sentinel and any such denials.

In a continuing effort to cooperate with Plaintiffs and avoid court intervention, Allegiance made Visser available for his deposition on September 11, 2017.  Counsel for Allegiance made a record of its objections to the proceeding at the outset.  Found. Aff. Luck, Ex. C: Dep. Visser 7:6-10:24.  However, Plaintiffs conducted a wide-ranging deposition of Visser, exploring topics that could not possibly be relevant to their case.

During the deposition of Visser, Plaintiffs pointed to an email from Frazier to a different (non-Allegiance) plan administrator.  Found. Aff. Luck, Ex. C:  Dep. Visser 99:21-24; Ex. J:  Email from Frazier to Laurie Good, Consumers Mutual (Sept. 8, 2015 10:54 AM) (Dep. Ex. 121).  In this email, Frazier indicated Valley may accept lower than their billed charges because they had recently entered into a preferred provider agreement for reimbursement at a rate of ***.[4]  In the Sentinel 30(b)(6) deposition several months later, Frazier indicated that he was likely referring to the Allegiance-Valley Preferred Provider Contract in that email.  Plaintiffs note that the Allegiance-Valley Preferred Provider Contract included a confidentiality clause.

Plaintiffs questioned Visser as to whether Allegiance shared with Frazier the confidential terms of its Preferred Provider Contract.  Visser stated that Frazier

---

[4]  Plaintiffs have asserted that the reimbursement rate referenced by Frazier is confidential.  McHugh's argument here does not require disclosure of the reimbursement rate referenced by Frazier.

9

may have guessed that the reimbursement rate was *** based on publicly available information.  Found. Aff. Luck, Ex. C:  Dep. Visser 91:13-21.

During Visser's deposition, Plaintiffs asked Visser a number of questions regarding the negotiation of this Preferred Provider Contract.  This included who at Allegiance was involved in negotiating the rate (Dep. Visser 86:8-10), how the allowable rate was arrived at (Dep. Visser 85:23-86:7), and what involvement Visser had in the negotiations and approval of the rate (Dep. Visser 102:19-103:6).  Visser stated that he was not sure who negotiated the Preferred Provider Contract but thought that it may have been Allegiance employee McHugh.  Found. Aff. Luck, Ex. C:  Dep. Visser 85:1-9.  Plaintiffs also asked Visser to agree to various characterizations regarding the terms of the Preferred Provider Contract, which Visser disagreed with.  Found. Aff. Luck, Ex. C:  Dep. Visser 84:5-21.

During the later Sentinel 30(b)(6) deposition, Frazier stated multiple times that nobody told him the precise terms of Allegiance's Preferred Provider Contract with Valley.  He stated that someone at Allegiance had advised him that Allegiance had entered into a preferred provider agreement with Valley and therefore would not be submitting additional Valley claims for rate reviews to Sentinel.  Mr. Frazier testified:

> They just said that, hey, it looks like we've got a resolution with
> Valley Med Life, so you probably won't see anymore claims from
> Valley.  That's about – that's about it.

Found. Aff. Luck, Ex. D:  Dep. Frazier 135:12-15.  Frazier explicitly stated that he

did not know the exact amount of the reimbursement rate.

> The person did not tell me the nature of the agreement or anything
> else, but I assumed because I know that Allegiance has what they call
> a maximum eligible amount in their documents, that it had to be
> somewhere around ***.

Found. Aff. Luck, Ex. D:  Dep. Frazier 133:24-134:3 (confidential information

redacted).  Plaintiffs' counsel pressed Frazier on this issue and Frazier repeatedly

asserted he did not know the details of the agreement but made an assumption

regarding the terms based on his knowledge of Allegiance's maximum eligible

expense allowable amount.

> I don't know the terms.  I don't know what they agreed-upon.  I
> expect that it's something around *** just because of the maximum
> eligible amount.

Found. Aff. Luck, Ex. D:  Dep. Frazier 138:3-6 (confidential information

redacted).  Frazier stated that he was not sure which person at Allegiance had told

him about the Valley agreement but thought it may have been Allegiance

employee McHugh.  Found. Aff. Luck, Ex. D:  Dep. Frazier 134:13-17.

Plaintiffs have now issued a subpoena to depose Allegiance employee

McHugh.  McHugh's counsel wrote to Plaintiffs' attorneys seeking an explanation

as to why McHugh was a necessary witness in the case.  Found. Aff. Luck ¶ 12,

Ex. J:  Luck ltr. to Pls.' counsel, Apr. 23, 2018.

Plaintiffs responded that because Frazier had mentioned McHugh in the deposition as "one of two individuals at Allegiance who" could have mentioned Valley's contract with Allegiance, and because that contract's terms are, according to Plaintiffs, "highly confidential," that automatically made Frazier's deposition necessary to their defamation and tortious interference with contract claims. Found. Aff. Luck ¶ 13, Ex. K:  Ltr. from Pls.' counsel to Luck, Apr. 25, 2018. Plaintiffs assert — contrary to any record evidence — that McHugh or someone else at Allegiance must have told Frazier the "highly confidential" contract rate. Found. Aff. Luck, Ex. K.  Plaintiffs seek to depose McHugh to learn "how Mr. Frazier acquired knowledge of the existence and terms of the agreement between Allegiance and Valley."  Found. Aff. Luck, Ex. K.

Plaintiffs seek this deposition despite Frazier's repeated testimony that nobody told him the terms of the contract, including the contractual reimbursement rate.  Plaintiffs have not asserted any other basis for deposing McHugh.

In response, McHugh's attorney agreed to a deposition on the precise topic identified by Plaintiffs: how Mr. Frazier acquired knowledge of the existence and terms of the agreement between Allegiance and Valley.  McHugh's attorney further asserted that the deposition must be appropriately limited in scope to protect Allegiance's business information in order to maintain its ability to conduct arms-length negotiations with Valley and Valley's sister entities (of which there

12

are several).  The letter stated:

> We will not subject Mr. McHugh to a wide-ranging deposition in
> which you attempt to gain information about Allegiance, its inner-
> workings or its confidential business information, which appears to us
> (especially in light of your line of questioning in the Visser
> deposition) to be your actual, unstated purpose in seeking Mr.
> McHugh's deposition.  That said, for purposes of avoiding a motion to
> quash, we are willing to agree to a limited examination of Mr.
> McHugh regarding his knowledge of "how Mr. Frazier acquired
> knowledge of the existence and terms of the agreement between
> Allegiance and Valley," despite the lack of basis in Mr. Frazier's
> deposition testimony for deposing Mr. McHugh on that topic.  Please
> confirm you will abide by such an agreement regarding the scope of
> Mr. McHugh's deposition, and then we can discuss dates for the
> deposition.

Found. Aff. Luck ¶ 14, Ex. L:  Luck ltr. to Pls.' counsel, Apr. 26, 2018.

Even though it was defined by them, Plaintiffs refused to agree to this

limitation on scope.  Plaintiffs also did not agree to avoid probing into Allegiance's

confidential business matters — matters that, if known to Valley and its related

entities, would prejudice Allegiance in its arms-length bargaining with those

entities.  Found. Aff. Luck ¶ 15, Ex. M:  Ltr. from Pls.' counsel to Luck, May 3,

2018.  The parties agreed to postpone the deposition and seek guidance from this

Court regarding the scope of McHugh's deposition.  Found. Aff. Luck ¶ 16, Ex. N:

Emails, May 4, 2018.

McHugh seeks an order modifying the subpoena or a protective order from

this Court limiting the scope of the deposition as defined by Plaintiffs themselves:

13

how Mr. Frazier acquired knowledge of the existence and terms of the agreement between Allegiance and Valley.  Plaintiffs are aware that McHugh was involved in the negotiation of the Preferred Provider Contract between Allegiance and Valley. Plaintiffs have previously demonstrated their interest in how Allegiance negotiates and forms preferred provider agreements.  An order limiting the scope of the deposition to the sole relevant issue identified by Plaintiffs is therefore appropriate.

## II.  LEGAL STANDARD

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  Fed. R. Civ. P. 45.  On timely motion, the court "must quash or modify a subpoena" if the subpoena subjects a person to undue burden.  Fed. R. Civ. P. 45(d)(3)(A).  The court "may, on motion, quash or modify the subpoena" if it requires disclosing a trade secret or other confidential commercial information. Fed. R. Civ. P. 45(d)(3)(B).

In determining whether a subpoena poses an undue burden, courts "weigh the burden to the subpoenaed party against the value of the information to the serving party." *Soto v. Castlerock Farming & Transp., Inc*., 282 F.R.D. 492, 504 (E.D. Cal. 2012) (quoting *Travelers Indem. Co. v. Metropolitan Life Ins. Co*., 288 F.R.D. 111, 113 (D. Conn. 2005)).

14

Discovery is limited to non-privileged matters that are "relevant" to a party's claim or defense.  Fed. R. Civ. P. 26(b)(1).  Additionally, the discovery must be proportional to the needs of the case, considering the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 26(c) provides that a person from whom discovery is sought may move for a protective order.  The court may, for good cause, issue an order to protect the person from annoyance, embarrassment, oppression, or undue burden or expense.  The protective order may forbid the discovery; prescribe a discovery method other than the one selected by the party; or limit the scope of discovery to certain matters.  Fed. R. Civ. P. 26(c).

"The burden is upon the party seeking the [protective] order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).  The existence of good cause for a protective order "is a factual matter to be determined from the nature and character of the information sought by deposition or interrogatory weighed in the balance of the factual issues involved in each action."  *White v. Smyers*, No. 2:12-cv-2868 MCE AC P, 2015 U.S. Dist. LEXIS 50479, at *9 (E.D. Cal. Apr. 15, 2015) (quoting 8A Charles Ann Wright, Arthur R. Miller & Mary

Kay Kane, *Federal Practice & Procedure* § 2035 (3d ed., West 2014) (quoting

*Glick v. McKesson & Robbins*, 10 F.R.D. 477, 479 (W.D. Mo. 1950))).

"This burden can be met by showing that the sought after discovery is

irrelevant." *Carrera v. First Am. Home Buyers Prot. Co*., No. 13cv1585-BAS

(JLB), 2014 U.S. Dist. LEXIS 101064, at *2 (S.D. Cal. July 23, 2014) (citing Fed.

R. Civ. P. 26(b)(2)(C)(iii) ("the court must limit the frequency or extent of

discovery . . . if it determines that . . . "the burden or expense of the proposed

discovery outweighs its likely benefit")).  "The compulsion of production of

irrelevant information is an inherently undue burden" for which a protective order

may issue.  *Jimenez v. City of Chi.*, 733 F. Supp. 2d 1268, 1273 (W.D. Wash.

2010) (citing *Compaq Comput. Corp. v. Packard Bell Elecs*., 163 F.R.D. 329, 335-

336 (N.D. Cal. 1995)); *Monte H. Greenawalt Revocable Tr. v. Brown*, No. 2:12-

cv-01983-LRH-VCF, 2013 U.S. Dist. LEXIS 178802, at *8 (D. Nev. Dec. 18,

2013) ("Discovery requests seeking irrelevant information are inherently undue

and burdensome"); *Ginena v. Alaska Airlines, Inc*., No. 2:04-cv-01304-RCJ-CWH,

2011 U.S. Dist. LEXIS 116656, at *4 (D. Nev. Oct. 6, 2011) ("If discovery sought

is not relevant, the court should restrict discovery by issuing a protective order.").

The fact that the discovery is sought from a non-party should be considered

by the Court as it weighs the burden of the discovery.  *See, e.g., Dart Indus. Co. v.*

*Westwood Chem. Co.* 649 F.2d 646, 649 (9th Cir. 1980) (recognizing that it may be

necessary to impose additional restrictions on non-party discovery to protect third

parties from harassment, inconvenience, or disclosure of confidential information);

*Arista Records LLC v. Lime Grp. LLC* No. 06-cv-5936 (KMW), 2011 U.S. Dist.

LEXIS 20709, at *9 (S.D.N.Y. Mar. 1, 2011) ("When balancing the relevance of a

particular discovery request against the burden of production, 'special weight

[should be given] to the burden on non-parties of producing documents to parties

involved in the litigation.'" (Citations omitted.)); *Fears v. Wilhelmina Model*

*Agency, Inc.*, 2004 U.S. Dist. LEXIS 5575, at *2 (S.D.N.Y. Mar. 29, 2004)

("[W]here, as here, discovery is sought from a non party, the Court should be

particularly sensitive to weighing the probative value of the information sought

against the burden of production on the non party."); *RQ Const., Inc. v. Ecolite*

*Concrete U.S.A., Inc.,* 2010 U.S. Dist. LEXIS 80217, at *1 (S.D. Cal. Aug. 4,

2010) (status as non-party considered when balancing relevance, requesting party's

need, and burden on producing party).

### III.   ARGUMENT

Plaintiffs have subpoenaed a non-party, McHugh, an employee of

Allegiance, to testify at a deposition.  Plaintiffs have identified just one line of

questioning for McHugh that they assert is relevant to their lawsuit: how Mr.

Frazier acquired knowledge of the existence and terms of the agreement between

Allegiance and Valley.  McHugh has agreed to a deposition limited to that line of

17

questioning, but Plaintiffs have insisted on a more wide-ranging deposition. Plaintiffs have not provided McHugh with any legal theories or references to the record in their lawsuit that would support the need for the unlimited deposition which they demand.

A protective order is appropriate where a party seeks irrelevant discovery. *Carrera*, 2014 U.S. Dist. LEXIS 101064, at *12 (issuing protective order limiting the scope of deposition testimony to preclude discovery into irrelevant issues). Further, discovery must be proportional to the needs of the case, considering the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Finally, McHugh is a non-party to the litigation. A court should therefore be particularly sensitive to weighing the probative value of the information sought against the burden on the non-party. *See, e.g.*, *Dart Indus. Co.,* 649 F.2d at 649.

The probative value of any deposition of McHugh appears to be minimal. Frazier testified multiple times that nobody told him the reimbursement rate of the Allegiance-Valley contract. Instead, he simply guessed what the contract rate likely was based on his knowledge of Allegiance's maximum allowable rates. Further, that preferred provider agreement between Allegiance and Valley is not the subject of Plaintiffs' lawsuit against Sentinel and Frazier. Instead, Plaintiffs'

18

lawsuit focuses on alleged defamation by Sentinel and Frazier related to Plaintiffs' estimated costs to operate their air transports.  Conducting a deposition of McHugh to determine whether he was the source of the information to Frazier is not proportionate to the needs of the case because discovery on this topic will not resolve any of the issues in this case.

Nevertheless, McHugh has agreed to a deposition limited to the single relevant issue identified by Plaintiffs themselves:  whether McHugh was the source of information to Frazier.  Plaintiffs have instead insisted on a broader deposition.  Upon specific inquiry, Plaintiffs have provided no explanation for how this broader deposition would have any probative value to their claims.

It appears, based on Plaintiffs' prior deposition of Visser, that Plaintiffs are interested in Allegiance's negotiation of preferred provider contracts.  McHugh negotiates such contracts on behalf of Allegiance.  Found. Aff. Luck, Ex. C:  Dep. Visser 85:1-9.  Deposing McHugh on how Allegiance negotiates and forms these types of preferred provider agreements may provide Valley, and its sister air ambulance companies, with important information that they could use against Allegiance in future negotiations.

Alternatively, Plaintiffs appear to be following through on their threat to use their lawsuit against Sentinel to harass and intimidate any plan administrators who used Sentinel's services.  Plaintiffs' counsel advised that any plan administrator

who used Sentinel's services "will receive a subpoena."  Found. Aff. Luck, Ex. B-

2.

Discovery is limited to relevant information.  Fed. R. Civ. P. 26(b)(1).

Plaintiffs should not be permitted to use the discovery process to harass or

intimidate non-party plan administrators who felt that Plaintiffs' billed rates were

exorbitant and who relied on Sentinel to provide an analysis of a reasonable

reimbursement rate.  Fed. R. Civ. P. 26(g)(i)(A)(ii) (prohibiting discovery for

improper purposes such as harassment); *Coleman-Hill v. Governor Mifflin Sch.

Dist.*, 271 F.R.D. 549, 554 (E.D. Pa. 2010) ("The abuse of subpoena power is most

dangerous because it threatens to erode public confidence in the judicial system.

Attorneys must understand the high degree of trust that is imposed upon them, and

must conduct themselves with the utmost care when using the Court's subpoena

power." (citing *McCurdy v. Wedgewood Capital Mgmt. Co*., CIVIL ACTION NO.

97-4304, 1998 U.S. Dist. LEXIS 18875, at *26-27 (E.D. Pa. Nov. 16, 1998) (citing

*Spencer v. Steinman,* 179 F.R.D. 484, 489 (E.D. Pa. 1998)))); *see also Atty. Griev.

Comm'n of Md. v. Mixter*, 109 A.3d 1, 21 (Md. 2015) (disbarring an attorney, in

part, due to his abuse of the subpoena power by issuing subpoenas "simply to

harass the recipients"); *Seltzer v. Morton*, 2007 MT 62, ¶ 57, 336 Mont. 225, 154

P.3d 561 (defining abuse of process as "an attempt by the plaintiff to use process to

coerce the defendant to do some collateral thing which he could not be legally and

20

regularly compelled to do." (quoting *Brault v. Smith*, 209 Mont. 21, 29, 679 P.2d 236, 240 (1984))).

A protective order is appropriate here to limit McHugh's deposition to the sole relevant issue identified by Plaintiffs and to protect Allegiance and McHugh from being required to disclose confidential business information which Valley and its sister entities could use against Allegiance in future negotiations.

## IV.   COSTS AND FEES

McHugh is a non-party to this litigation.  McHugh's employer, non-party Allegiance, has already supplied 3,000 documents pursuant to a subpoena and has had its CEO deposed in this litigation.  Allegiance and McHugh are entitled to be compensated for costs and fees associated with McHugh's deposition, including a reasonable hourly rate for all employees' time spent preparing for and sitting for McHugh's deposition.  *Compaq Comput. Corp.,* 163 F.R.D. at 339 ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party.") (quoting *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir.))).

McHugh further seeks costs and fees, pursuant to Fed. R. Civ. P. 26(c)(3), for being forced to file this Brief in Support of Motion to Modify Subpoena or for a Protective Order to limit the scope of his deposition.

21

## V.    CONCLUSION

Despite McHugh's strong belief that being required to participate in a deposition in Plaintiffs' lawsuit is inappropriate, he is willing to be deposed. McHugh has agreed to be deposed regarding the single matter identified by Plaintiffs as relevant: how Mr. Frazier acquired knowledge of the existence and terms of the agreement between Allegiance and Valley.  Plaintiffs have refused to limit the scope of potential topics they may inquire about during the deposition. That unwillingness portends a wider motive consistent with the excessive scope of discovery to date in this proceeding.

McHugh therefore seeks a protective order from this Court limiting the scope of McHugh's deposition.  McHugh's deposition should be limited to the sole relevant issue identified by Plaintiffs:  how Mr. Frazier acquired knowledge of the existence and terms of the agreement between Allegiance and Valley.  This will protect non-party McHugh and non-party Allegiance from being subjected to additional questions regarding their confidential business practices which Valley and its sister air ambulance entities could use against Allegiance in future negotiations.  This protective order will also ensure that discovery sought in this proceeding by the subpoena issued to McHugh is proportional and not harassing. ///

2493501

DATED this 14th day of May, 2018.


_/s/  Bradley J. Luck_____
Attorneys for Allegiance Benefit Plan
Management, Inc. and James McHugh


CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this **James McHugh's**
Brief in Support of Motion to Modify Subpoena or for a Protective Order is printed
with proportionately spaced Times New Roman text typeface of 14 points; is
double-spaced; and the word count, calculated by Microsoft Office Word 2010, is
5056 words long, excluding Caption, Certificate of Service and Certificate of
Compliance.


_/s/  Bradley J. Luck_____
Attorneys for Allegiance Benefit Plan
Management, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2018, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| _____ | CM/ECF |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax (include fax number in address) |
| 1-3 | E-Mail (include email in address) |

1.     Jeffrey J. Hunt
          Royce B. Covington
          Rachel Lassig Wertheimer
          Parr Brown Gee & Loveless, P.C.
          101 S. 200 E., Ste. 700
          Salt Lake City, UT 84111
          jhunt@parrbrown.com
          rcovington@parrbrown.com
          rwertheimer@parrbrown.com
            *Attorneys for Plaintiffs*

2.     James A. Hemphill (pro hac vice)
          Matthew Baumgartner (pro hac vice)
          GRAVES DOUGHERTY HEARON
          & MOODY
          401 Congress, Suite 2200
          Austin, TX 78767-9998
          jhemphill@ghdm.com
          mbaumgartner@gdhm.com

3.     Ryan B. Bell (9956)
          KUNZLER P.C.
          50 W. Broadway, Suite 1000
          Salt Lake City, UT 84101
          rbell@kunzlerlaw.com
            *Attorneys for Defendants Sentinel Air Medical Alliance, LLC and Jeffrey Frazier*

                    /s/  Bradley J. Luck
                    Attorneys for Allegiance Benefit Plan Management, Inc.

24

2493501